IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :

v.        :        CRIMINAL NO.  25-028

DARRYL T. WELLS        :

### GOVERNMENT'S SENTENCING MEMORANDUM

In December 2018 and January 2019, while employed as a Deputy Sheriff Officer with the City of Philadelphia, defendant Darryl T. Wells submitted eight fraudulent loan and credit applications to financial institutions in which he falsely and materially overstated his monthly income and, in some instances, attached forged paystubs. In total, Wells received $145,000 in fraudulently obtained proceeds, which he immediately spent or transferred, and the financial institutions were not repaid.

Applying the Section 3553(a) factors, a sentence within the applicable Guidelines range is warranted in this case, to punish Wells for committing criminal conduct while holding a position of public trust, and to deter others who commit fraud at the expense of financial institutions.

## I.    BACKGROUND

### A.    Procedural History

On January 23, 2025, the government charged Darryl T. Wells with three counts of bank fraud in violation of 18 U.S.C. § 1344, related to a related to a series of fraudulent loan and credit applications in which he falsely and materially overstated his monthly income and attached forged paystubs. Presentence Investigation Report (PSR) ¶ 1. On November 18, 2025,

Wells pleaded guilty pursuant to a written plea agreement to Count Three of the indictment, which included a joint stipulation that the defendant's crime of conviction involved losses of more than $95,000 but less than $150,000, along with an appellate waiver. *Id.* ¶¶ 2, 5. As part of the plea agreement, the defendant also agreed to pay victim restitution of as much as $145,000, along with a forfeiture money judgment of $15,000 related to the Count Three offense. *Id.* ¶¶ 5-6. The government agreed to dismiss Counts One and Two of the indictment at the time of sentencing. *Id.* ¶ 4.

The Probation Office subsequently prepared a comprehensive Presentence Investigation Report, which outlined the offense conduct and correctly calculated the applicable Sentencing Guidelines as 8-14 months, a Zone B offense. PSR ¶ 73.

Sentencing is scheduled for 2:30 p.m. on March 3, 2026.

### B.    Offense Conduct

In December 2018 and January 2019, while employed as a Deputy Sheriff Officer with the City of Philadelphia, defendant Darryl T. Wells submitted eight fraudulent loan and credit applications:

1. 12/6/18 – Mr. Wells submitted an application for a credit card and line of credit with Trumark Financial Credit Union;

2. 12/7/18 – Mr. Wells submitted an application for a credit card with American Heritage Credit Union;

3. 12/7/18 – Mr. Wells submitted an application for a credit card with PSECU;

4. 12/8/18 – Mr. Wells submitted an application for a credit card with Synchrony Bank;

5. 12/12/18 – Mr. Wells submitted an application for a personal loan with Sun East Federal Credit Union;

6. 12/13/18 – Mr. Wells submitted an application for a credit card with Citadel Federal Credit Union;

7.  12/19/18 – Mr. Wells submitted an application for a line of credit with the Philadelphia Federal Credit Union; and

8.  01/08/19 – Mr. Wells submitted an application for a personal loan with Sun East Federal Credit Union.

PSR ¶ 10. Mr. Wells falsely reported an inflated income in each of these eight loan applications, and in support of some of the applications Mr. Wells also attached forged paystubs. *Id.* ¶ 11. In total, Mr. Wells received $145,000 from these financial institutions in the form of loans, lines of credit, and credit cards, and Mr. Wells spent or transferred the entirety of those funds shortly after receipt. *Id.* The financial institutions were not repaid. *Id.*

In contrast to the representations made on the loan applications, Mr. Wells' employment records, financial records, and bankruptcy filings show that he actually earned approximately half of what he reported on the applications. PSR ¶ 12. For example, a comparison of the forged paystubs that Mr. Wells submitted to the financial institutions with Mr. Wells' actual pay deposits show the inflated income:

- 11/30/18 forged paystub -- $5,384.61 net direct deposit after withholdings
- 11/20/18 actual pay deposit -- $2,594.03 net direct deposit after withholdings

- 12/07/18 forged paystub -- $6,307.69 net direct deposit after withholdings
- 12/06/18 actual pay deposit -- $3,354.63 net direct deposit after withholdings

- 12/21/18 forged paystub -- $6,307.69 net direct deposit after withholdings
- 12/20/18 actual pay deposit -- $2,913.32 net direct deposit after withholdings

*Id.*

When approached and interviewed by the FBI, Mr. Wells admitted that he (1) submitted a series of loan applications in late 2018 and early 2019 while employed as a Deputy Sheriff with the City of Philadelphia, (2) received over $100,000 in loan proceeds and either spent the funds or transferred the money to his romantic partners, (3) inflated his actual income on multiple loan applications, (4) created fake paystubs to make it appear he earned more than his actual salary,

- 3 -

and (5) knew what he was doing was wrong at the time, and that he intentionally misled the banks about his income to increase the chance his loan applications would be approved. PSR ¶ 14.

As to Count Three specifically, on January 8, 2019, Mr. Wells submitted a fraudulent loan application to Sun East Federal Credit Union for a $15,000 personal loan. PSR ¶ 13. Wells' loan application listed a falsely inflated monthly gross income and attached forged paystubs which stated that he earned $270,949.12 from the Philadelphia Sheriff's Office in 2018, when in fact Wells earned less than half that amount. *Id.* Sun East Federal Credit Union, which was a financial institution and whose deposits were insured by the National Credit Union Administration, approved the loan application and disbursed the $15,000 in loan funds to Mr. Wells. *Id.* Upon receipt, Mr. Wells withdrew and spent the entire amount of the loan, including by writing checks to friends and romantic partners, making ATM cash withdrawals, and purchasing clothing in New York. *Id.* No amounts were repaid to Sun East Federal Credit Union.

## II.   SENTENCING CALCULATION

### A.   Statutory Maximum Sentence

For Count Three, bank fraud in violation of 18 U.S.C. § 1344, the maximum penalty for each count is 30 years' imprisonment, a 5-year period of supervised release, a $1,000,000 fine, and a $100 special assessment.

### B.   Sentencing Guidelines Calculation

The Probation Office correctly calculated Wells' advisory guideline range as 8 to 14 months' imprisonment, a Zone B offense. PSR ¶ 73. This range is calculated as follows: the base offense level for bank fraud is 7, which is increased by 8 offense levels because the actual fraud loss exceeded $95,000 but is less than $150,000, pursuant to USSG § 2B1.1(b)(1). *Id.* ¶¶ 21-22.

Wells has demonstrated acceptance of responsibility for his offense, making him eligible for a 2-level downward adjustment under USSG §3E1.1(a). *Id.* ¶ 27. Wells also meets the criteria for a Zero-Point offender under USSG §4C1.1, which further reduces his offense level by 2 additional levels. *Id.* ¶ 28. This calculation leaves Wells with an adjusted offense level of 11, along with a criminal history category of I due to no criminal history points, resulting in an advisory guideline range as 8 to 14 months' imprisonment. *Id.* ¶¶ 29-35, 73.

### C. Forfeiture and Restitution

As part of his plea agreement, Wells agreed to a forfeiture money judgment in the amount of $15,000, which represents the proceeds that he obtained from the offense of bank fraud charged in Count 3. PSR ¶ 5-6. The defendant also agreed to pay victim restitution of as much as $145,000. *Id.* The victims and corresponding restitution amounts from the offense conduct are as follows:

1. Trumark Financial Credit Union – $35,000 – 335 Commerce Drive, Fort Washington, PA 19034

2. American Heritage Credit Union – $10,000 – 2060 Red Lion Road, Philadelphia, PA 19115

3. Pennsylvania State Employees Credit Union – $30,000 – 1500 Elmerton Avenue, Harrisburg, PA 17110

4. Sun East Federal Credit Union – $35,000 – 4500 Pennell Road, Aston, PA 19014

5. Citadel Federal Credit Union – $20,000 – 520 Eagleview Blvd., Exton, PA 19341

6. Philadelphia Federal Credit Union – $15,000 – 12800 Townsend Road, Philadelphia, PA 19154

## III. SENTENCING ANALYSIS

After considering all the sentencing factors set forth in 18 U.S.C. § 3553(a), a sentence within the applicable Sentencing Guidelines range of 8 to 14 months' imprisonment is warranted

in this case, both to punish Wells for committing criminal conduct and to deter others who commit fraud at the expense of financial institutions.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition to considering the Guidelines, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). Simply stated, the Section 3553(a) factors require the Court to focus on both the offense and the offender, and to

consider factors of retribution, deterrence, incapacitation, and rehabilitation. *Tapia v. United States*, 564 U.S. 319, 325 (2011) (explaining 18 U.S.C. § 3553(a)).

### A.      The Nature and Circumstances of the Offense

The conduct here is serious. While employed as a Deputy Sheriff Officer with the City of Philadelphia in 2019 and 2020, defendant Darryl T. Wells submitted eight fraudulent loan and credit applications to financial institutions in which he falsely and materially overstated his monthly income and, in some instances, attached forged paystubs. Wells received $145,000 in fraudulently obtained proceeds, which he immediately spent or transferred, and the financial institutions were not repaid. Wells' offense was serious, harmful to multiple financial institutions, in contravention to his public duties as a law enforcement officer, and supports the requested sentence.

### B.      Wells' History and Characteristics

Wells, age 34, worked as a Deputy Sheriff for more than 10 years with the Philadelphia Sheriff's Office between 2013 and 2024, including with the Fugitive Warrant Unit. PSR ¶ 63. During this time, Wells also worked part-time at the Philadelphia International Airport, and he has continued to work at the Airport full-time for the past two years following his departure from the Sheriff's Office. Wells graduated from high school in 2009 and obtained an associate's degree in business management in 2011. *Id.* ¶¶ 59-60. He reports to be in good health. *Id.* ¶¶ 50-53. Although Wells does not have any substance abuse issues, he has previously struggled with gambling, including during the period of his offense. *Id.* ¶¶ 54-58. Wells has no prior criminal convictions. *Id.* ¶¶ 30-35.

Wells' long-standing and steady employment and his lack of criminal history are undoubtedly mitigating factors when considering an appropriate sentence. Notably, Wells'

Sentencing Guidelines range of 8 to 14 months already factors in Wells' lack of criminal history, as he qualified as a zero-point offender, which reduced his offense level by 2 levels and lowered his guidelines, in addition to being placed in criminal history category I. PSR ¶ 28. As result, the proposed sentence and the guidelines range adequately account for Wells' lack of prior criminal activity, balanced against his criminal acts.

### C.    The Seriousness of the Offense, Respect for the Law, and Just Punishment, and Adequate Deterrence

The sentence imposed is required to reflect to the seriousness of the offense, promote respect for the law, provide just punishment, and "afford adequate deterrence to criminal conduct" by others who would commit similar offenses. 18 U.S.C. § 3553(a)(2); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (internal quotations omitted); *Gall v. United States*, 552 U.S. 38, 54 (2007) (noting that it is a "legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for the law").

While serving in a position of public trust for more than 10 years as a Deputy Sheriff Officer, Wells repeatedly engaged in fraudulent conduct for personal gain, including by lying under oath and creating forged documents which were submitted to multiple banks. Wells' conduct demonstrates a need for both general and specific deterrence, and the requested sentence appropriately sends a message to others who might consider fudging or fabricating figures on their bank and loan applications.

**D.**     **The Importance of the Guidelines and Unwarranted Sentencing Disparities**

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (citations and quotations omitted). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

Adherence to the recommended guideline range is the only course for assuring that a defendant's sentence is consistent with those imposed nationwide to similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity. In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017).

.IV.    **CONCLUSION**

In sum, after factoring in all of the appropriate considerations, a sentence within the applicable guidelines range is warranted in this case, along with victim restitution of $145,000 to the specified victims. Such a sentence is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further misconduct.

Respectfully Submitted,

David Metcalf
United States Attorney

/s/ Samuel S. Dalke
SAMUEL S. DALKE
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served via ECF filing notification to Shaka M. Johnson, Esq. and D'yal K. McAllister, Esq., who are counsel for defendant Darryl T. Wells.

/s/ Samuel S. Dalke
Assistant United States Attorney

Date:  February 24, 2026